UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JENNIFER VALLOMBROSO,<br>    *Petitioner*,<br>    *v.*<br>UNITED STATES OF AMERICA,<br>    *Respondent*. | Civil No. 3:11cv473 (JBA)<br><br>February 5, 2014 |

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Jennifer Vallombroso petitions for a writ of habeas corpus and moves to vacate her conviction [Doc. # 1] pursuant to 28 U.S.C. § 2255. Petitioner argues that she received ineffective assistance of counsel during her trial because her attorney failed to file a motion "requesting [that cooperating witness Gerald Cobb] not be allowed to testify at [her] trial," and because he did not object to Mr. Cobb's testimony as a "Lay Pharmacological Expert" on the grounds that it was improper expert testimony. (Habeas Pet. at 5.) For the following reasons, Ms. Vallombroso's petition is denied.

**I.     Factual and Procedural Background**

On February 27, 2008, after a three-day trial, a jury found Ms. Vallombroso guilty of conspiracy to distribute and to possess with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). (*See United States v. Vallombroso* ("*Vallombroso I*"), 07-cr-211 (JBA), Verdict Form [Doc. # 57].) During the trial, the Government offered evidence that Petitioner had participated in three drug transactions together with her husband and co-defendant—John Vailette, a cooperating witness—Gerald Cobb, and an undercover FBI agent. The Government offered phone records and recordings, in addition to the testimony of several law enforcement witnesses in support of its case. The Government also solicited testimony

from Gerald Cobb regarding the alleged conspiracy. (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. I [Doc. # 91] at 174–208; Trial Tr. Vol. II [Doc. # 92] at 227–304.) On cross-examination, Mr. Cobb was questioned extensively regarding his criminal history and past drug use, in addition to his plea and cooperation agreements and his possible motives for testifying. (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. II at 240–60.)

Mr. Cobb testified that Petitioner had used heroin on the day of one of the drug transactions in question (*see id.* at 230–31), and Petitioner's trial counsel requested a voluntary intoxication charge late in the evening of the first day of trial (*see id.* at 218). On the morning of the second day of trial, Petitioner's trial counsel produced for the first time Petitioner's rehabilitation records showing that she had been treated with methadone on the days when the alleged drug transactions took place. (*See id.* at 315.) Given the mid-trial disclosure of the records, the parties reached an agreement as to their admissibility and decided that Petitioner would offer the records in her case in chief. (*See id.* at 314–18.) The Court had the following colloquy with counsel outside the presence of the jury to confirm this agreement:

> The Court:     . . . And the understanding here is that when those go in, then the government's entitled on rebuttal to recall Mr. Cobb for his vast expertise in drug effects and he will be asked about methadone, if he knows anything about that.
> Mr. Koffsky:   Certainly your Honor.
> The Court:     So does that satisfy you Mr. Chang?
> Mr. Chang:     Yes, it would. Thank you, your Honor.
> The Court:     We have our lay pharmacological expert.
> Mr. Chang:     It's all we can do at the last second, your Honor. We just got these records today.
> The Court:     That being the case.

(*Id.* at 317–18.)

After Petitioner's trial counsel offered her medical records, the Government recalled Mr. Cobb as a rebuttal witness. Mr. Cobb testified as to his observation of multiple heroin users, and as to his personal experience using heroin and methadone. (*See id.* at 327–30.) Based on this personal knowledge, Mr. Cobb then testified that the effect of heroin on a person who has already used methadone is that "[y]ou need more heroin to feel the effects of the heroin if you're on methadone." (*Id.* at 330–31.) On cross-examination, Mr. Cobb admitted that he was not a scientist, chemist, or drug counselor and that he had never been involved in a methadone maintenance program. (*Id.* at 334–35.) Neither attorney ever referred to Mr. Cobb as an expert, or to his testimony as expert testimony. In its closing argument, the Government made one brief reference to Mr. Cobb's testimony as to the effect of ingesting both heroin and methadone. (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. III [Doc. # 93] at 454–55.)

After trial, Petitioner filed a timely appeal of her conviction, arguing that there was insufficient evidence of her intent to join the conspiracy, and that the Court had erred in allowing Mr. Cobb—a lay witness—to offer expert testimony at trial. *See United States v. Vallombroso* ("*Vallombroso II*"), 372 F. App'x 208, 209 (2d Cir. 2010). The Second Circuit found that Petitioner had waived and forfeited her claim regarding Mr. Cobb's testimony by failing to object to his testimony at trial. *Id.* at 210–11. Reviewing the claim for plain error, the court concluded that "[a]ny error, if there was one, did not affect Vallombroso's substantial rights because the disputed testimony was at best tangential to the main issue of whether Vallombroso intended to join the conspiracy." *Id.* at 211. The Court of Appeals affirmed her conviction and sentence. *Id.* at 212. The judgment became final on July 29, 2010, ninety days after it was affirmed on appeal, and on March 25, 2011, Petitioner filed a timely habeas petition.

3

## II. Legal Standard

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors that, were they left intact, would "inherently result in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). "Habeas review . . . 'will not be allowed to do service for an appeal,'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)), and "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment," *United States v. Addonizio*, 442 U.S. 178, 184 (1979). As a general rule, "relief is available under § 2255 only for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994).

## III. Discussion

Petitioner alleges that she received ineffective assistance of counsel at her trial because (1) her attorney failed to move to preclude Gerald Cobb from testifying and (2) her attorney failed to object to Mr. Cobb's lay opinion testimony regarding the effect of heroin on someone who had recently ingested methadone.

A claim of ineffective assistance of counsel is assessed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment," *id.* at 687, and counsel's performance must have been "outside the wide range of professionally competent assistance," *id.* at 690.  Second, the petitioner must affirmatively prove prejudice by showing that counsel's errors were so serious that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (quoting *Strickland*, 466 U.S. at 690).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." *Strickland*, 466 U.S. at 689.

    A.    **Failure to Move to Exclude Mr. Cobb as a Witness**

Petitioner argues that she received ineffective assistance of counsel at trial when her attorney failed to file a motion "requestin[g] that [Mr. Cobb] not be allowed to testify at [her] trial" because he was not a credible witness in light of his cooperation agreement, prior felony convictions and drug use. (Habeas Pet. at 5.)  The gravamen of Petitioner's claim is that Mr. Cobb was not competent to testify because his background gave rise to the inference that he might not testify truthfully.  However, it is well established that "assessments of witness credibility and choices between competing inferences lie solely

5

within the province of the jury." *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010); *see also Hoffa v. United States*, 385 U.S. 293, 311 (1966) ("The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury."). Thus, the Second Circuit has previously rejected similar arguments that a witness should be precluded from testifying based on his or her criminal record. In *United States v. Mallah*, 503 F.2d 971 (2d Cir. 1974), the court held that despite the fact that a government witness had admitted to committing perjury at three other criminal trials and that he did not expect to be prosecuted for that perjury, the witness was still competent to testify, and that the proper method for testing his credibility was intense cross-examination. *Id.* at 981. Similarly, in *United States v. Campo*, 414 F.2d 765 (2d Cir. 1969) (per curiam), the court held that the challenged witness's criminal background and suicide attempts did not render his testimony inadmissible, but rather were factors for the jury to consider when determining the weight and credibility of his testimony. *Id.* at 766. The Supreme Court has also recognized that the fact that an informant had a motive to lie does not mean that his testimony was untrue or that it was constitutionally inadmissible. *Hoffa*, 385 U.S. at 311. In light of this longstanding precedent, a motion to exclude Mr. Cobb's testimony based on his criminal record, cooperation agreement, and history of drug use would have been meritless. Trial counsel's failure to make such a meritless argument was not objectively unreasonable.

Furthermore, Petitioner has not established that she suffered prejudice as a result of trial counsel's failure to make such motion. Petitioner's counsel subjected Mr. Cobb to extensive cross-examination regarding his criminal record, his cooperation with the government, and his drug use. (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. II at

240–60.)  The jury was also specifically instructed that cooperating witnesses have a special interest in criminal cases and that the jurors should therefore carefully scrutinize Mr. Cobb's testimony.  (*Vallombroso I*, 07-cr-221 (JBA), Jury Instructions [Doc. # 52] at 25–26.)  Thus, Petitioner received the benefits of "the established safeguards of Anglo-American legal system."  *Hoffa*, 385 U.S. at 311.  Moreover, Mr. Cobb's testimony was largely corroborative of the audio recordings, which were entered into evidence through law enforcement witnesses, and of the testimony of the officers who surveilled the alleged drug transactions.  (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. I at 75, 149, 152.)  In light of this independent evidence of Petitioner's guilt, Petitioner cannot show that but for her counsel's failure to exclude Mr. Cobb's testimony she would have been acquitted.  Therefore, her first claim of ineffective assistance of counsel fails.

      **B.**      **Failure to Object to Mr. Cobb's Lay Opinion Testimony**

Petitioner also argues that she received ineffective assistance of counsel because her trial attorney failed to object to Mr. Cobb's testimony regarding the effect of taking both methadone and heroin as improper expert testimony.  Petitioner claims that she was unaware that she could object to this testimony or that it could be deemed improper and that therefore her attorney should have objected on her behalf.  (*See* Habeas Pet. at 5.)  At trial, Petitioner's counsel made a strategic decision to offer Petitioner's medical records, in support of her voluntary intoxication defense, knowing that they would be the subject of rebuttal testimony from Mr. Cobb.  (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. II at 314–18.)  During Mr. Cobb's testimony, Petitioner's attorney objected on the basis that the testimony was hearsay and that Mr. Cobb lacked personal knowledge.  (*See id.* at 327, 330.)  Her trial counsel also cross-examined Mr. Cobb regarding his lack of scientific expertise or involvement with methadone treatment programs.  (*See id.* at 334–35.)  Such

strategic choices and active cross-examination can hardly be said to be outside the wide range of professionally competent representation.

Furthermore, Mr. Cobb's testimony did not constitute improper expert testimony. Pursuant to Federal Rule of Evidence 701, lay opinion testimony is admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge . . . ." With respect to the first requirement, the Second Circuit has explained that "[a] rational perception is one involving first-hand knowledge or observation." *United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008). With respect to the second requirement, the Second Circuit has cautioned that lay opinion testimony is not admissible where it merely tells the jury what result to reach. *See United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005). With respect to the third requirement, the Second Circuit has held that "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *Id.* at 215. "The purpose of this final foundation requirement is to prevent a party from conflating expert and lay testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16 and Fed. R. Civ. P. 26." *Id.* "Thus, in considering the third prerequisite for lay opinion testimony, a court must focus on the 'reasoning process' by which a witness reached his proffered opinion." *Id.*

Mr. Cobb's testimony at trial satisfied all three requirements of Rule 701. He testified that he had personally used methadone and heroin together, and that he had used specific quantities of those substances together. (*See Vallombroso I*, 07-cr-211 (JBA), Trial Tr. Vol. II at 330–334.) Mr. Cobb also testified that he had observed the mother of

his children take methadone in conjunction with heroin. (*See id.* at 330–32.) Thus, his testimony that one needs to take more heroin to get high after ingesting methadone was based on his personal experience with these substances and his direct observation of others who were using these substances. Mr. Cobb's testimony was also helpful to the determination of a fact in issue in the case, because there was evidence that Petitioner had ingested both heroin and methadone on the date of one of the alleged drug transactions, and Mr. Cobb's testimony could have assisted the jury in assessing the effect of those substances on Petitioner and her mental state.

Finally, focusing on Mr. Cobb's reasoning process, the Court concludes that Mr. Cobb's testimony was not based on any specialized, scientific knowledge. Mr. Cobb admitted that he was not a scientist or a chemist (*see id.* at 334), and he did not discuss any scientific concepts or principles in his testimony. He did not base his opinion that a person needs to take more heroin to feel high when they have previously ingested methadone on the chemical properties of those substances or on any chemical process in the body. Rather, he testified regarding his personal experience of the effects of the combined substances, explaining that his experience of the effects of heroin was different when taken in conjunction with methadone than when taken alone. Mr. Cobb did not try to explain the cause of this difference in the highs he experienced. At least one other court has recognized that a lay individual can properly testify as to the combined effect of two substances based on personal experience under Rule 701. *See Marks v. Marina Dist. Dev. Co. LLC*, 213 F. App'x 147, 152 (3d Cir. 2007) (holding that the district court properly permitted questioning of a witness as to whether Wellbutrin tended to magnify the effect of alcohol based on that witness's experience ingesting both substances at once). Although the average person may not have experience with methadone or heroin, the

reasoning process Mr. Cobb used in giving his testimony is familiar to the average person. *See Yannotti*, 541 F.3d at 126 (holding that although the average person may not have knowledge regarding loansharking, a witness could properly testify as to his lay opinion under Rule 701 where his testimony was based on his personal loansharking experience in the alleged criminal enterprise rather than on specialized knowledge). Because Mr. Cobb's lay opinion testimony was admissible under Rule 701, Petitioner's trial counsel's failure to object to this testimony on the grounds that it was improper expert testimony was not objectively unreasonable.

Furthermore, Petitioner has not established that she was prejudiced by the admission of Mr. Cobb's lay opinion testimony regarding the effects of methadone and heroin. On direct appeal, the Second Circuit described this testimony as "at best tangential to the main issue of whether Vallombroso intended to join the conspiracy." *Vallombroso II*, 372 F. App'x at 211. Mr. Cobb testified as to his direct observation of Petitioner's demeanor and appearance on the day in question (*see Vallombroso I*, Trial Tr. Vol. II at 232–35), and the jury heard recordings of Petitioner based on which it could have reached an independent conclusion regarding her state of mind and whether or not she was capable of forming the requisite intent to join the conspiracy. Furthermore, Mr. Cobb's testimony regarding the effects of methadone and heroin was brief, and was only mentioned in passing during the Government's closing argument. Neither counsel ever referred to him as an expert or to his testimony as expert testimony. Thus, this testimony did not permeate the trial, and even if it had been excluded there was sufficient evidence based on which the jury could have concluded that that Petitioner had formed the requisite intent. Therefore, Petitioner cannot establish that but for her counsel's failure to

object to this testimony, she would have been acquitted, and her second claim of ineffective assistance of counsel also fails.

### C. Evidentiary Hearing

Petitioner has not requested an evidentiary hearing as to the claims she raises in her § 2255 petition, and one is not required because the record plainly demonstrates that, as a matter of law, she is not entitled to relief and her claims are truly without merit. *See United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990) ("Where a petition omits meritorious allegations that can be established by competent evidence, it would go too far to say that it was error for the district court to have failed to conduct a full evidentiary hearing." (internal citations omitted)).

### IV. Conclusion

For the reasons discussed above, Ms. Vallombroso's Petition [Doc. # 1] to Vacate, Set Aside, or Correct her Sentence is DENIED. The Clerk is directed to enter judgment for Respondent and to close this case.

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* In order to sustain this burden, Petitioner would have to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citations and quotation marks omitted). "Where a district court has rejected [a petitioner's] claim[] on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Id.* The

Court finds that reasonable jurists could not debate whether or not Ms. Vallombroso received ineffective assistance of counsel during her trial, and therefore the Court declines to issue a COA.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of February, 2014.